UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEYER PHARMATECH INC.,<br><br>Defendant. | CIVIL NO. 20-cv-1104<br><br><br><br><br>CIVIL PENALTIES<br>21 U.S.C. §§ 842 (c)(1) |

<u>COMPLAINT FOR CONSENT JUDGMENT</u>

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through the undersigned attorneys, and very respectfully alleges and prays:

1.      This is an action for recovery of civil monetary penalties under the Controlled Substances Act, 21 U.S.C. §§ 801-904 ("the Act").  The Act imposes civil penalties on persons or entities who commit prohibited acts specified in section 842.  21 U.S.C. § 842 (c)(1).  Pursuant to 21 U.S.C. §  842 (c)(1)(A) and 28 U.S.C. §  1355, the district courts of the United States have original jurisdiction over actions to recover and enforce penalties under the Act.

2.      Venue of this action is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1395(a) because the penalties accrued in this district and the Defendant is found in this district.

3.      At all relevant times hereto, Defendant Seyer Pharmatech Inc. ('Seyer"), is a chemical distributor authorized to distribute List I chemicals.  Seyer has been registered with DEA as a List I chemical distributor in Puerto Rico since August 14, 1998, under DEA Registration Number

1

00356SRY.  SEYER is authorized to operate in Puerto Rico, and was issued a Department of Health

Representative Agent license in January of 2018.  SEYER's Headquarters are located in the State of

Florida under the name of Pronova Corp.

4.      At all times relevant, Seyer was required to acquire List I Chemicals

(Pseudoephedrine) only from DEA registered suppliers, as required by 21 C.F.R. §§ 1309.21(a)

(2), 1310.07 (a) and 21 U.S.C. §§ 822 (a) (1), 830(a)(3) and 842(a)(9).  Seyer was also required to

maintain complete and accurate records, to take due diligence in verifying the identity of parties

in a regulated transaction, and to not possess and/or illegally distribute list I chemicals, as

required by 21 C.F.R. §§ 1309.21(a)(2), 1310.06(a), and 1310.07(a).  Failure to comply with these

regulatory provisions constitute the basis for violations of 21 U.S.C. §§ 822(a)(1), 823(h)(2),

830(a)(3), 841(f)(1), 842(a)(5), and 842(a)(9).  In addition, for these violations, civil penalties are

authorized and may be assessed under 21 U.S.C. § 842(c)(1)(A) and 842(c)(1)(B).

5.      On January 3, 2018, DEA initiated a scheduled investigation and inspection of Seyer's

distribution activities.  As a result of the investigation and inspection of the facilities, DEA found

certain violations of the Act and the regulations promulgated therein, specifically that Seyer:

(A)      Seyer illegally acquired approximately 15,800 products, through 4 transactions,

containing a List I Chemical (Pseudoephedrine) from an unregistered supplier, since Seyer's

supplier, Pronova Corporation/Seyer Pharmatec, was not registered with DEA as a List I Chemical

Distributor.

(B)      Failed to maintain complete and accurate records, since 109 distribution records did

not contain the DEA registration number and/or contact information of each party to the regulated

transaction and 4 receiving records did not contain the DEA registration number and/or contact

information of each party to the regulated transaction.

(C)     Failed to take due diligence in verifying the identity of the other party to a regulated transaction, since Seyer provided a list of approximately 400 physicians they distribute samples to; of the 400 listed physicians, 13 physicians' DEA registrations either had been retired, had expired, had changed, or were documented incorrectly.

(D)     Illegally distributed products containing a List I Chemical (Pseudoephedrine) to an unregistered customer, since Seyer conducted 42 distribution transactions to Drogueria Borschow who was not registered with the DEA.

(E)     Seyer illegally distributed products containing a List I Chemical, since Seyer conducted 88 distribution transactions after the expiration of their Puerto Rico Department of Health license.

(F)     Seyer illegally possessed products containing a List I Chemical with a retail value of approximately $245,000.00 and conducted a total of 243 illegal distributions in violation of 21 U.S.C. § 841(f)(1).  As such, DEA is entitled to Administrative Forfeitures under 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983, and 28 C.F.R. Parts 8 and 9.

## CLAIM FOR RELIEF

6.     The United States re-alleges and incorporates herein by reference the allegations in Paragraphs 1 through 5.

7.     The DEA inspection revealed the statutory violations cited above, which are also referenced and incorporated herein.

8.     Pursuant to 21 U.S.C. §§ 842(c)(1)(A) and 842(c)(1)(B) the United States is entitled to recover from Seyer civil penalties in an amount not to exceed $15,040.00 and $25,000.00, respectively, when adjusted for inflation under the Department of Justice ("DOJ") Civil Monetary Penalties Inflation Adjustment table, for each one of the statutory violations referenced above.

9.     On January 21, 2020, the parties in this action reached a Settlement Agreement in which Seyer agreed to pay $190,000.00 in U.S. Currency, plus interest, as civil monetary penalties and forfeitures, to be paid off subject to a payment schedule.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that judgment be entered in its favor and against defendant as follows:

A.  Enter a consent judgment to enforce the agreement reached by the parties in this action.

B.  Grant the United States interests from the date of judgment and such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 24th day of February 2020.

W. STEPHEN MULDROW
United States Attorney

*/s Jorge L. Matos*
Jorge L. Matos
Assistant U.S. Attorney
Civil Division
USDC No. G01307
Torre Chardon, Room 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
Tel. (787) 282-1814
Fax. (787) 766-6219
E-mail: Jorge.L.Matos2@usdoj.gov

**Attachment 1: Civil Cover Sheet**

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

Seyer Pharmatech Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Caguas, PR
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jorge L. Matos, Assistant U.S. Attorney
U.S. Attorney's Office, 350 Chardon Avenue., Suite 1201
Hato Rey, PR 00918 Tel: 787-766-5656

Attorneys *(If Known)*
María Domínguez
CIDM, Torre 1, Suite 402
Guaynabo, PR 00968

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1   U.S. Government · Plaintiff | ☐ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. Section 842(c)(1)

Brief description of cause:
CSA Civil Penalties Under 21 U.S.C. Section 842(c)(1)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
190,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
02/24/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

**Attachment 2: Category Sheet**

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

---

## CATEGORY SHEET

---

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

---

Attorney Name (Last, First, MI):  Matos, Jorge L.

USDC-PR Bar Number:  G01307

Email Address:  Jorge.L.Matos2@usdoj.gov

---

1.  Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

   Plaintiff:  United States of America

   Defendant:  Seyer Pharmatech Inc.

2.  Indicate the category to which this case belongs:

   ☒ Ordinary Civil Case

   ☐ Social Security

   ☐ Banking

   ☐ Injunction

3.  Indicate the title and number of related cases (if any).

   N/A

4.  Has a prior action between the same parties and based on the same claim ever been filed before this Court?

   ☐ Yes

   ☒ No

5.  Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

   ☐ Yes

   ☒ No

6.  Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

   ☐ Yes

   ☒ No

Date Submitted:  2/24/20

rev. Dec. 2009

[ Print Form ]   [ Reset Form ]

**Exhibit A: Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Attorney's Office, District of Puerto Rico and on behalf of the Drug Enforcement Administration, Caribbean Division, San Juan Office, (collectively the "**UNITED STATES**") and Seyer Pharmatec Inc., (hereinafter referred to as "**SEYER**") through their authorized representatives.

### **GENERAL PROVISIONS**

A.      The United States Department of Justice, Drug Enforcement Administration ("DEA") is an agency of the United States of America.

B.      SEYER is a chemical distributor authorized to distribute List I chemicals.  SEYER has been registered with DEA as a List I chemical distributor in Puerto Rico since August 14, 1998, under DEA Registration Number 003565SRY.  SEYER is authorized to operate in Puerto Rico, and was issued a Department of Health Representative Agent license in January of 2018. SEYER's Headquarters are located in the State of Florida under the name of Pronova Corp.

C.      On January 3, 2018, DEA initiated a scheduled investigation and inspection of SEYER's distribution activities, pursuant to the Caribbean Division, San Juan Diversion Group, Work Plan for Fiscal Year 2018.

D.      As a result of the investigation and inspection of the facilities, DEA found certain violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and the regulations promulgated therein, specifically that SEYER:

1)      During the audit period, SEYER illegally acquired approximately 15,800 products, through four (4) transactions, containing a List I Chemical (Pseudoephedrine) from an unregistered

supplier, as required by 21 C.F.R., Sections 1309.21 (a) (2) and 1310.07 (a), and in violation of 21 United States Code (21 U.S.C.) Sections 822 (a) (1), 830 (a) (3) and 842 (a) (9), since:

     a.    SEYER's supplier, Pronova Corporation/Seyer Pharmatec, is not registered with DEA as a List I Chemical Distributor.

     2)    Failed to maintain complete and accurate records, as required by 21 C.F.R., Section 1310.06 (a), and in violation of 21 U.S.C. Section 842 (a) (5), since:

     a.    109 distribution records did not contain the DEA registration number and/or contact information of each party to the regulated transaction.

     b.    Four (4) receiving records did not contain the DEA registration number and/or contact information of each party to the regulated transaction.

     3)    Failed to take due diligence in verifying the identity of the other party to the regulated transaction, as required by 21 C.F.R., Section 1310.07 (a), and in violation of 21 U.S.C. Sections 842 (a) (9) and 842 (c) (1) (A), since:

     a.    SEYER provided a list of approximately 400 physicians they distribute samples to; of the 400 listed physicians, 13 physicians' DEA registrations either had been retired, had expired, had changed, or were documented incorrectly.

     4)    Illegally distributed products containing a List I Chemical (Pseudoephedrine) to an unregistered customer, as required by 21, C.F.R., Sections 1309.21 (a) (2) and 1310.07 (a), and in violation of 21 U.S.C. Sections 822 (a) (1), 830 (a) (3) and 842 (a) (9) since:

     a.    SEYER conducted 42 distribution transactions to Drogueria Borschow who is not registered with the DEA.

     5)    SEYER illegally distributed products containing a List I Chemical, in violation of 21 U.S.C. Section 823 (h) (2) since:

     a.    SEYER conducted 88 distribution transactions after the expiration of their Puerto Rico, Department of Health, "Agente Representante" license that expired on August 9, 2017.

6)      SEYER illegally possessed products containing a List I Chemical with a retail value of approximately $245,000.00 and conducted a total of 243 illegal distributions in violation of 21 U.S.C. Section 841 (f) (1).

All of the above alleged violations, if proven at an administrative or judicial proceedings, could constitute the basis for the revocation of the Respondent's DEA registration pursuant to 21 U.S.C. 824(a)(4) or the imposition of a civil penalty not to exceed $10,000.00 per violation pursuant to 21 U.S.C. 842(a)(5).

E.      The UNITED STATES contends that it has certain civil claims against SEYER arising from the conduct described in Paragraph D above, pursuant to Title 21, Code of Federal Regulations ("C.F.R."), §§ 1309.21(a)(2), 1310.06(a), 1310.07(a), and in violation of Title 21 U.S.C. §§ 822(a)(1), 823(h)(2), 830(a)(3), 841(f)(1), 842(a)(5), 842(a)(9) and 842(c)(1).  That conduct is referred to below as the Covered Conduct. Had this cause of action proceeded against SEYER in Court, the UNITED STATES sustains it would have had valid and sufficient evidence to prove its allegations against SEYER.

F.      This Settlement Agreement is neither an admission of liability, nor an admission of the facts stated in relation to the alleged Covered Conduct in this Settlement Agreement or in the Memorandum of Agreement  by SEYER, including but not limited to its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, as well as the corporation's officers, agents, servants, and employees, nor a concession by the UNITED STATES that its claims are not well founded.

3

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.     SEYER shall pay to the UNITED STATES **ONE HUNDRED AND NINETY THOUSAND DOLLARS ($190,000.00)** in addition to interest on the Settlement Amount at the prevailing legal rate to accrue from the date of judgment, and the payment shall be divided as follows: **ONE HUNDRED AND SIXTY THOUSAND DOLLARS ($160,000.00)** as civil monetary penalties payable to the **UNITED STATES DEPARTMENT OF JUSTICE** via electronic wire transfer or Manager's Check, and **THIRTY THOUSAND DOLLARS ($30,000.00)** as an Administrative Forfeiture payable to the **UNITED STATES MARSHALS SERVICE** via regular check, to be paid under the terms specified below.  The parties further agree pursuant to Section 523 of the U.S. Bankruptcy Code, that for purposes of the United States Bankruptcy Code, 11 US.C. §101 et seq., or any successor statute, the amounts due hereunder are not dischargeable.  The aforementioned sum will be paid in the following payment schedule:

A.     On or before January 14, 2020, SEYER will make a first payment to the UNITED STATES in the amount of **THIRTY THOUSAND DOLLARS, ($30,000.00) (Administrative Forfeiture Payment)**.

B.     Over a period of 36 months, beginning on or before February 15, 2020, SEYER will pay the remaining **ONE HUNDRED AND SIXTY THOUSAND DOLLARS ($160,000.00)**, plus interest to accrue from the date of judgment at the determined U.S. Treasury post-judgment interest rate computed daily and compounded annually, in monthly installment payments of $4,445.00 plus interest.

2.      SEYER shall send the monthly payment accompanied by a properly completed Department of Justice (DOJ) monthly statement payment coupon. The check or money order must include the United States Attorney's Office CDCS number, which will be subsequently provided to SEYER, and mailed to the following address: U.S. Department of Justice, Nationwide Central Intake Facility, PO Box 790363, St. Louis, MO 63179-0363. If the monthly payment coupon is not received by SEYER, a check or money order payable to the U.S. Department of Justice shall still be mailed to: U.S. Attorney's Office, Attention: Financial Litigation & Asset Recovery Section, #350 Chardon Street, Suite 1201, Carlos Chardon Avenue, San Juan, PR 00918. The United States Department of Justice will in turn credit the payments per the agency's applicable payment procedures.

3.      In the event that SEYER fails to pay any amount as provided in paragraphs A and B above within (5) business days of the date on which such payment is due, SEYER shall be in Default ("Default") of its payment obligations. The United States will provide written notice of the Default to SEYER and SEYER shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to SEYER at the following address: 5000 SW 75th Avenue, Suite 113, Miami, Florida 33155. If SEYER fails to cure such Default within five (5) business of receiving the Notice of Default, the remaining unpaid balance of the Agreement Amount shall become immediately due and payable. The amount owed will bear post judgment interests at the legal rate, as provided by law, over the unpaid principal. Any payments made will be applied first to interest earned and accrued through the day of payment and the balance, if any, will be applied to principal. Plaintiff at its sole discretion may proceed to execute the Judgment for the remaining total amount due, plus interest, costs, attorney's

5

fees; and, the 10% surcharge if forced to utilize any of the remedies under subchapters B or C of the FDCPA.

4.      SEYER has agreed to a Consent Judgment in the amount of the unpaid balance based on this Agreement, and has agreed not to plead, argue, or otherwise raise any defenses opposing any motions seeking enforcement of this Agreement.  The United States, at its sole option, may also: (a) proceed to execute the Judgment in this case approving the Agreement and the Stipulation for Consent Judgment, for the remaining total amount due, plus interests, costs, attorney's fees; and the 10% surcharge if forced to use any of the remedies under the applicable subchapter of the FDCPA; (b) offset the remaining unpaid balance from any amounts due and owing to SEYER by any department, agency, or agent of the United States at the time of Default; (c) file a civil action, or a motion to enforce this Agreement in any related pending civil matter in the event of Default; (d) register and/or enforce any lien that may be filed in the Property Registries pertaining to this case or (e) exercise any other rights granted by law or in equity, including referral of this matter for private collection.  As such, SEYER agrees not to object to the United States requesting from the Court the authorization to file Notices of Lien in the Property Registries in this case, or to the United States filing them when deemed appropriate.

5.      SEYER agrees not to contest any consent judgment, offset, or any collection action undertaken by the United States pursuant to Paragraphs 3 and 4 above, either administratively or in any state or federal court.  SEYER recognizes that the schedule of payments is merely a minimum schedule of payments and not the only method of enforcement, nor a limitation on the methods, and that the United States may use, in addition to, other available means to enforce the judgment such as garnishments and court debtor examinations among other methods.

6

6.     The parties further agree that if SEYER, during the duration of the aforementioned payment plan, develop the ability to pay in full the outstanding monies owed to the United States, SEYER may do so in a lump sum.  SEYER agrees to furnish any financial documents requested by the Government and submit to financial evaluation(s) when circumstances change and until all the monetary penalties have been satisfied.  SEYER further agrees to notify the United States Attorney's (Financial Litigation & Asset Recovery Section), when transferring or receiving any interest in property with a value exceeding $1,000.00 owned directly or indirectly, individually or jointly by SEYER, including any interest held or owned under any other name, including trusts, partnerships and/or corporations while the debt remains outstanding.

7.     Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon SEYER's full payment of the Settlement Amount, and subject to Paragraph 11 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the UNITED STATES releases SEYER, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, as well as the corporation's officers, agents, servants, and employees from any civil or administrative monetary claim the UNITED STATES has for the Covered Conduct described in Paragraph "D", above, and arising under the statutes cited in Paragraph "E". The statements contained in this Paragraph "7", however, DO NOT release SEYER from compliance with the agreements and conditions specified in the Memorandum of Agreement between DEA and SEYER, herein attached as Exhibit I.

8.    Notwithstanding the releases given in Paragraph "7" of this Agreement, or any other term of this Agreement, the following claims of the UNITED STATES are specifically reserved and are not released:




      a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.    Except as explicitly stated and released in this Agreement, any administrative liability or compliance as required in the Memorandum of Agreement (Exhibit I);

      c.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct alleged in Paragraph "D";

      d.    Any liability based upon obligations created by this Agreement or the Memorandum of Agreement (Exhibit I);

      e.    Any liability of individuals not released in this agreement.

9.    SEYER, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, as well as the corporation's officers, agents, servants, and employees, fully and finally releases the UNITED STATES, its agencies, officers, agents, employees, and servants, from any claims that SEYER has asserted, could have asserted, or may assert in the future against the UNITED STATES, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the UNITED STATES' investigation and prosecution thereof.

10.    SEYER warrants that it has reviewed its financial situation, and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the signatory

Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to SEYER, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the signatory Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which SEYER was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

11.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, SEYER commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of SEYER's debts, or seeking to adjudicate SEYER as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for SEYER or for all or any substantial part of SEYER's assets, SEYER agrees as follows:

a.     SEYER's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and SEYER shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) SEYER's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) SEYER was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the UNITED STATES; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to SEYER.

9

b.      If SEYER's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the UNITED STATES, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against SEYER for the claims that would otherwise be covered by the releases provided by this Agreement. SEYER agrees that (i) any such claims, actions, or proceedings brought by the UNITED STATES are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and SEYER shall not argue or otherwise contend that the UNITED STATES' claims, actions, or proceedings are subject to an automatic stay; (ii) SEYER shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the UNITED STATES within ninety (90) calendar days of written notification to SEYER that the releases have been rescinded pursuant to this Paragraph,; and (iii) the UNITED STATES can assert claim against SEYER in the amount of **TWO MILLION SIX HUNDRED AND FIVE THOUSAND DOLLARS ($2,605,000.00)** [the full amount of the claim], in civil monetary penalties, which include **ONE HUNDRED AND SEVENTY THOUSAND THREE HUNDRED AND TWENTY SEVEN DOLLARS ($176,327.00)**, of administratively forfeitable amounts, and the UNITED STATES may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding, less any payment received by the United States in conformity with this agreement.

12.      In the event of a voluntary or involuntary liquidation or reorganization case by or against the defendant under bankruptcy, receivership or other insolvency law, SEYER agrees not

10

to contest or oppose any motion filed by the UNITED STATES seeking relief from or modification of the automatic stay imposed by 11 U.S.C. § 362(a) nor to seek relief under 11 U.S.C. § 105 to enjoin or restrain the UNITED STATES from recovering monies owed by SEYER arising out of this agreement or its underlying relationship with the UNITED STATES related to the covered conduct through offset. SEYER recognizes that this express waiver is in consideration for the final settlement of the claims set forth in Paragraphs "D" and "E".



13.     The UNITED STATES and SEYER further agree that each party shall bear its own legal costs and attorney fees, including the preparation and performance of this Agreement.

14.     Each party and signatory to this Agreement represent that each has consulted their respective legal representatives regarding the implications and consequences of rights and concessions, under statutes detailed in Paragraph "E" and other applicable laws, made by each signatory of this agreement, and that as such all have signed and entered into this agreement freely and voluntarily, without any degree of duress or compulsion.

15.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Puerto Rico.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16.     This Agreement and the Memorandum of Agreement (Exhibit I) constitute the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

17.     The undersigned counsels represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

11

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19.     This Agreement is binding on SEYER's direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, transferees and heirs.

20.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).   Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

21.     Pursuant to this agreement, SEYER is aware that the United States will file a Complaint for Consent Judgment in the United States District Court for purposes of enforcement of this agreement.   Accordingly, SEYER consents to having the court enter judgment approving this Agreement, and retaining jurisdiction for enforcement purposes.

Executed in San Juan, Puerto Rico, this __21st__ day of January, 2020.

W. STEPHEN MULDROW
United States Attorney

Jorge L. Matos
Assistant U.S. Attorney

Civil Division
Attorney for the United States and the
United States Drug Enforcement Administration

David Martorani-Dale
Assistant U.S. Attorney

Civil Division
Attorney for the United States and the
United States Drug Enforcement Administration

Michael L. Badia
President and Chief Executive Officer
Seyer Pharmatec Inc.

María A. Domínguez
Attorney for SEYER

12